UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN LEE                                    Case No. 14-11292

                    Plaintiff,              Stephen J. Murphy, III
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 15)**

**I.    PROCEDURAL HISTORY**

        A.    Proceedings in this Court

        On March 28, 2014, plaintiff filed the instant suit seeking judicial review of

the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Stephen J.

Murphy referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 13, 15).  The

cross-motions are now ready for report and recommendation.

        B.    Administrative Proceedings

        Plaintiff filed the instant claim for supplemental security income benefits on

February 4, 2011, alleging disability beginning December 31, 2002.  (Dkt. 10-2,

Pg ID 56).  The Commissioner initially denied plaintiff's disability application on

June 10, 2011.  *Id.*  Plaintiff requested an administrative hearing, and on

November 5, 2012, she appeared with counsel before Administrative Law Judge

("ALJ") Thomas L. Walters, who considered her case de novo.  (Dkt. 10-2, Pg ID

56).  In a November 15, 2012 decision, the ALJ determined that plaintiff was not

disabled within the meaning of the Social Security Act.  (Dkt. 10-2, Pg ID 56-64).

The ALJ's decision became the final decision of the Commissioner on January 24,

2014, when the Social Security Administration's Appeals Council denied

plaintiff's request for review.  (Dkt. 10-2, Pg ID 45-48).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment (Dkt. 13) be **DENIED**, that defendant's

motion for summary judgment (Dkt. 15) be **GRANTED**, and that, pursuant to 42

U.S.C. § 405(g), the findings of the Commissioner of Social Security be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff had past relevant work as a floral arranger, retail manager, and

receptionist.  (Dkt. 10-2, Pg ID 62).  The ALJ applied the five-step disability

analysis to plaintiff's claims and found that plaintiff did not engage in any

substantial gainful activity since the application date of February 4, 2011.  (Dkt.

10-2, Pg ID 58).  At step two, the ALJ found that plaintiff had the following

severe impairments: post-traumatic stress disorder, affective disorder, lumbar

degenerative disease, and drug/alcohol abuse in remission.  (Dkt. 10-2, Pg ID 58).

At step three, the ALJ found that plaintiff did not have an impairment or

combination of impairments that met or equaled one of the listings in the

regulations.  *Id*.

The ALJ determined that plaintiff had the following residual functional

capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 416.967(a) except only unskilled work with a
> sit/stand option every 30-60 minutes; no walking greater
> than 100 feet; no heights or moving machinery; and no
> dealing with the public.

(Dkt. 10-2, Pg ID 59).  At step four, the ALJ determined that plaintiff was not

capable of performing any past relevant work.  (Dkt. 10-2, Pg ID 62).  At step five,

the ALJ concluded that based on plaintiff's age, education, work experience and

RFC, there were jobs that existed in significant numbers in the national economy

that plaintiff could have performed and, therefore, she was not under a disability at

any time from the alleged onset date through the date last insured.  (Dkt. 10-2, Pg

ID 63).

B.    Plaintiff's Claims of Error

According to plaintiff, her subjective complaints about her symptoms were consistent with the objective medical evidence and the entire case record. However, the ALJ concluded that she was not credible in her complaints about the intensity, persistence and limiting effects of her symptoms.  Even the SSA-referred psychologist noted in his examination report that he "did not see any effort [made by Ms. Lee] to exaggerate or minimize symptoms."  (Dkt. 13, Ex. 2, Psychological Evaluation, p. 3).  According to plaintiff, the ALJ did not take into account the medical professional's expert opinion on the authenticity of her symptoms.  The ALJ's analysis of plaintiff's credibility took into account the following:

> 1. she does not take pain medication;
>
> 2. the medical record consistently shows that Ms. Lee has intact memory, attention and concentration, no perceptual disturbances and that her speech was clear; and
>
> 3. she no longer attends AA or other support groups.

(Dkt. 10-2, Pg ID 62).  Plaintiff contends that none of these three points are indicative of her credibility.

According to plaintiff, the ALJ failed to comply with SSR 96-7p in discrediting her for her failure to obtain treatment without first considering her explanation for this lack of treatment.  "The adjudicator must not draw any

inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p at *7. Here, the ALJ did not consider any explanations as to why plaintiff was not taking pain medication and therefore was not in any position to draw inferences about her symptoms based on this criterion. SSR 96-7 explains that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services" so, according to plaintiff, simply stating that plaintiff is not credible because she does not take pain medication is unverifiable without further development of the record. Therefore, plaintiff maintains that citing this factor in the credibility determination without any explanation was contrary to proper legal procedure and not supported by any substantial evidence.

Plaintiff next contends that the ALJ's second stated reason to discount plaintiff's credibility, is equally without any merit because she never asserted her (a) memory, attention or concentration, or (b) her perception or speech were anything other than intact or clear, respectively. According to plaintiff, the ALJ never articulated how any of this would tarnish her credibility, and without his reasoning, it offers no clues to the reviewing court regarding his rationale. SSR

5

96-7p sets forth the requirement that the ALJ explains any credibility

determinations in a way that is "sufficiently specific to make clear to the

individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight."  Here, the ALJ never

explained why the second factor for discounting plaintiff's credibility bears any

weight or significance at all on the analysis, and therefore it is not sufficiently

specific since the ALJ fails to address this logical disconnect.

Plaintiff also contends that whether she chooses to attend AA or other

support groups is irrelevant to a credibility analysis.  Plaintiff also maintains that

whether she struggled with substance abuse or incarceration bears no weight on

her credibility.  The SSA referred psychologist documented in his psychological

evaluation that plaintiff is in sustained full remission as to all of her past substance

abuse issues and the ALJ acknowledges this in his SSA Determination.  Plaintiff

points out that she was able to get herself clean and successfully sustains a

substance-free lifestyle.  Yet, the ALJ never explains why continued attendance at

support groups is relevant to his credibility determination, and therefore, like the

other two factors, plaintiff asserts that it is not a valid reason to discount her

credibility.

Plaintiff also argues that because the ALJ's residual functional capacity

assessment incorporates the faulty credibility determination, the RFC assessment

6

misses the mark as to what she is actually capable of doing.  According to the ALJ, "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Dkt. 10-2, Pg ID 60). According to plaintiff, this entire premise is based on circular reasoning that completely unravels when the ALJ's credibility determination lacks the support of substantial evidence.

Based on the erroneous credibility analysis, the vocational expert's testimony regarding plaintiff's inability to perform any of the unskilled, sedentary jobs full-time was not even considered in the ALJ's determination.  Had the ALJ given plaintiff's testimony the proper consideration it deserved then the testimony provided by the vocational expert would have necessitated a finding of disability for plaintiff.  However, because the ALJ arbitrarily decided to discount plaintiff's credibility without sufficient evidence, she was denied the disability benefits.

Given her back pain and mental fragility, plaintiff asserts that she is in no condition to perform any of the jobs that comport with the ALJ's RFC. Specifically, plaintiff says that does not have the capability to sit/stand in 30-60 minute intervals.  Her back pain disallows her to simply alternate between sitting and standing, as both cause her pain in much shorter amounts of time, and neither actually relieves her pain.  Plaintiff asserts that she requires more accommodations

than a 30-60 minute sit-stand option, as more often than not, she must lie down on her side to alleviate the pain as much as possible. Plaintiff points out that she consistently claimed and testified as such and the objective medical records reinforce that she suffers from a medically recognized degenerative back condition. Her inability to sit or stand comfortably is supported by objective medical evidence without exception. Given these very real physical limitations, the vocational expert testified that plaintiff could not be productive in any sedentary job, and her condition renders her disabled.

SSR 96-9p provides that where "the need [to alternate sitting and standing] cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." Based on the frequency, duration, and irregularity that plaintiff requires such freedom to alternate between sitting, standing, and lying down, plaintiff asserts that there ceases to be an occupational base that can accommodate her limitations. As explained in SSR 96-9p, the RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing. The ALJ's RFC assessment for plaintiff indicates a 30-60 sit/stand option. According to plaintiff, a sit/stand option of this duration is not specific enough of an accommodation for her, and therefore is not in line with SSR 96-9p. In claims such as plaintiff's, SSR 96-9p explains that it is "especially useful" to consult a

8

vocational expert to determine whether the individual can make an adjustment to other work. And as stated above, the vocation expert's testimony provides that plaintiff's inability to sit or stand for prolonged periods of time coupled with her emotional fragility preclude the possibility of employment.

The ALJ also notes that plaintiff "can put away groceries, but cannot carry a laundry basket. She goes shopping and goes out to eat. She visits with friends weekly." (Dkt. 10-2, Pg ID 60). According to plaintiff, such "minimal daily functions are not comparable to typical work activities." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). And further, not only are these few functions not comparable to work, but plaintiff contends that the ALJ also mischaracterizes her testimony and inflates the scope of her daily activities. The ALJ noted that plaintiff can put away groceries, but he fails to acknowledge that this capability is not without severe limitations. Plaintiff can only put away groceries up to a certain height level due to her range of motion limitations, and she can only put away groceries that are very light in weight. (DKt. 10-2, Pg ID 79). And, plaintiff's limitations regarding putting away groceries is consistent with her inability as to getting laundry out of the machines due to the weight, and the requirement to bend over to pick up and set down the laundry. While plaintiff does make efforts to go grocery shopping with her mother, she has never been able to endure the entire shopping trip and has to go back to the car to sit or recline due

to the back pain.  (Dkt. 10-2, Pg ID 86).

According to plaintiff, the ALJ's description mischaracterizes her restricted lifestyle.  She is incapable of living on her own and requires the constant support of her mother.  Plaintiff says her back pain is so severe that her mother had to move upstairs so she could take the lower level bedroom to accommodate her inability to climb up and down the stairs.  So while plaintiff may go out to eat with her mom on a "good day," on her "bad days," she doesn't even get dressed because she will be right back in bed due to her pain.  Plaintiff says she endures extended periods of time where she never changes out of her pajamas and remains in bed all day due to her back pain.

As to plaintiff's PTSD and bipolar disorder, her ability to be in public and around people has been drastically affected in a way that makes work preclusive.  She testified, "It is very embarrassing when you can't predict when you're going to fall apart and have an emotional breakdown in public, and not be able to control yourself." *Id*. at Pg ID 79.  According to plaintiff, such emotional fragility is not compatible with being capable of holding down employment.  Plaintiff suffers from flashbacks daily, and she suffers from more severe emotional breakdowns three to four times a week. *Id*. at Pg ID 83-84.  So even though plaintiff may see a few friends a week, she asserts that she is not capable of interacting with anyone outside of a very small circle of trusted individuals, which is limited to her mother

and a few close friends.

C.    The Commissioner's Motion for Summary Judgment

According to the Commissioner, more than substantial evidence supports the ALJ's decision to find plaintiff's complaints not entirely credible.  The Commissioner contends that the medical evidence refutes plaintiff's allegation that her impairments were so severe that they prevented her from performing even the most undemanding jobs.  The Commissioner points out that, a few days before she applied for benefits, plaintiff had a completely normal physical examination, with "good muscle tone, no spasm[s], no paralysis ataxia, loss of coordination or irregular gait." (Tr. 16) (citing (Tr. 254).  Furthermore, there were "no tremors, ticks, or loss of sensation or function of the body."  (Tr. 254).  Around that same time, her medical and psychological problems were rated as a "1" on a one to nine scale (Tr. 227), and plaintiff noted that she did not have "any chronic medical problems which continue[d] to interfere with [her] life."  (Tr. 228).  She stated that she had not experienced or been troubled by any medical problems in the past thirty days and her provider rated her need for medical treatment as a "1" (presumably on the same one to nine scale).  (Tr. 228).

Additionally, plaintiff underwent an entirely normal mental status examination, which showed that she: was cooperative; had an appropriate stream of thought; had appropriate emotions, tones, reactions, and thought content; was

11

alert and neat; had appropriate speech, motor activity, and orientation; had intact

memory; had good insight and judgment; and had a fund of general knowledge

consistent with her education.  (Tr. 248).

In September 2012, plaintiff did not appear acutely ill or in any distress.

(Tr. 261).  While her gait was abnormal (Tr. 262), she was ambulatory without the

use of an assistive device (Tr. 261), and could perform heel and toe walking.  (Tr.

262).  Her "higher cerebral cortical functions, including speech and understanding,

were normal. All [of her] cranial nerves appeared to be intact."  (Tr. 270).  A

mental examination later that month saw more of the same unremarkable findings.

Plaintiff:

> did not seem significantly agitated or distressed at any
> time. She did not exhibit inappropriate social actions.
> She exhibited good verbal skills and was a good
> historian. She demonstrated adequate insight. Her motor
> activity appeared normal…. [Plaintiff] did not exhibit
> evidence of illogical, bizarre or circumstantial ideation.
> Her thought processes were logical and coherent. There
> was no indication of a thought disorder…[Plaintiff] did
> not exhibit evidence of hallucinations, delusions or
> obsessions. She did not report suicidal ideation or intent.

(Tr. 278).  While she "was teary-eyed at times," plaintiff exhibited a full range of

affect.  (Tr. 277).  She was oriented times three; could recall nine digits forward

and seven digits backward; could recall two out of three objects after a

three-minute time lapse; knew her birthday; and could correctly name four recent

past presidents. (Tr. 278). She "exhibited [a]verage capabilities for general fund of information [and] easily named five large cities, five currently famous people, and two current events." (Tr. 278). Plaintiff "completed Serial 7's with one mistake [and] easily completed Serial 3's without mistakes." (Tr. 278). Furthermore, she "correctly computed 8+5, 5x3 and 20/4." (Tr. 278). She demonstrated "[a]verage capabilities for abstract reasoning" (Tr. 278), and "[l]ow [a]verage capabilities for social judgment and comprehension." (Tr. 279).

According to the Commissioner, the ALJ pointed several other factors that called plaintiff's credibility into question. First, he noted how she admitted to working as little as two, and as much five, days per week after she applied for benefits. (Tr. 17, citing Tr. 277) ("[Plaintiff] occasionally works as a housekeeper at a hotel that her friends own. She has worked there for 2 1/2 months. She began working five days a week but is now down to two days a week"); *Norris v. Comm'r of Soc. Sec.*, 461 Fed.Appx. 433, 438 (6th Cir. 2012) (returning to work is inconsistent with disability). Additionally, the ALJ discussed how plaintiff racked up a significant amount of felony convictions for which she served lengthy stretches of incarceration. (Tr. 17, citing Tr. 277); *Mead v. Comm'r of Soc. Sec.*, 2014 WL 1366467, at *12 (W.D. Mich. 2014) (collecting cases for the proposition that an ALJ may use a claimant's criminal history to discount that claimant's credibility). Finally, the ALJ noted how plaintiff had not received any treatment

13

for her back since 1998 (Tr. 18), and had "had no mental health treatment, apart from her drug rehab treatment." (Tr. 17)

As indicated above, the ALJ highlighted during the credibility determination the largely unremarkable results of plaintiff's mental status examinations, including her intact memory, attention and concentration, as well as her clear speech and the absence of any perceptual disturbances. (Tr. 18, 237, 248, 262, 278). Plaintiff responds that this is irrelevant because she "never asserted her (a) memory, attention or concentration, or (b) her perception or speech were anything other than intact or clear, respectively." (Pl's Mem. 6). According to the Commissioner, that is not true. (Tr. 43-44) (Plaintiff noting that her fatigue interferes with her concentration and attention span). Additionally, contrary to plaintiff's argument, the ALJ did not have to catch her in a lie in order to discount her credibility. The Commissioner maintains that plaintiff's allegedly disabling mental impairments produced next to no abnormal psychiatric signs was certainly a reason to call the severity of those impairments into question.

Next, plaintiff argues that a history of incarceration was not a valid reason to discount her credibility. (Pl's Mem. 6-7). The Commissioner contends that this was entirely appropriate, particularly since plaintiff served time for retail fraud. (Tr. 17, citing Tr. 277) ("She has been arrested for retail fraud, prostitution and possession of drugs on four or five occasions. She said many of these charges

14

were felonies.  She reported that she has spent a total of about three years in jail").

According to the Commissioner, that offense involves an element of

untruthfulness and directly bears on plaintiff's "propensity to testify truthfully."

Fed. R. Evid. 609, Note to Subdivision (a).  Because plaintiff committed a crime

of that nature, the ALJ properly relied on her history of incarceration during the

credibility determination.  *See Maglieri v. Barnhart*, 81 Fed.Appx. 179, 180 (9th

Cir. 2003) (upholding a credibility determination where the claimant gave a

statement that "amounted to an admission of fraud").

The Commissioner maintains that plaintiff's medical records simply did not

back up her claims of disabling impairments.  According to the Commissioner,

combined with her criminal history, the credibility determination is supported by

more than substantial evidence.  The ALJ took it one step further and decided to

question plaintiff's credibility on the grounds that she was no longer in alcoholics

anonymous (Tr. 18), and because she had previously abused drugs and alcohol.

(Tr. 16).  Furthermore, he faulted her for not taking any medication (Tr. 18),

despite the fact that she stated she could not afford it.  (Tr. 44); *see also Bloe v.*

*Comm'r of Soc. Sec.*, 2011 WL 1233566, at *8 (E.D. Mich. 2011) report and

recommendation adopted, 2011 WL 1188721 (E.D. Mich. 2011) ("The failure to

seek treatment for a period of time may be a factor to be considered against a

claimant…unless a claimant simply has no way to afford or obtain treatment to

15

remedy her condition") (citation omitted).  Even assuming plaintiff is correct that the ALJ erred when relying on these reasons, the Commissioner contends that it makes little difference because, even putting aside the ALJ's reliance on these factors, plaintiff's unremarkable medical records and history of deception still constituted substantial evidence in support of the ALJ's decision to find her not entirely credible.  Therefore, any error in relying on those factors was harmless. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citation omitted) ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal").

In a semi-related argument, plaintiff claims that it was improper for the ALJ to rely on her ability to perform daily activities because "[s]uch 'minimal daily functions are not comparable to typical work activities.'" (Pl's Mem. 11) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007)) (emphasis removed).  Nevertheless, the Commissioner maintains that the ALJ was entitled, as a matter of law, to "consider household and social activities in evaluating [plaintiff's] complaints of disabling pain." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  Plaintiff also argues that the ALJ overstated her daily activities.  According to plaintiff, the ALJ acknowledged that she put away groceries and did laundry, but failed to mention that her limited

16

range of motion and trouble bending restricted both activities.  (Pl's Mem. 11-12);

see also (Tr. 16, 35).  The Commissioner points out, however, that the ALJ

specifically mentioned plaintiff's alleged difficulties with bending and range of

motion.  (Tr. 16).  And, the ALJ only discussed plaintiff's daily activities during

his recitation of her testimony—there is no indication that they played any role in

the credibility analysis.  (Tr. 16).  Finally, even if the ALJ did slightly overstate

plaintiff's daily activities, the Commissioner again asserts that substantial

evidence still supports his credibility determination for the reasons discussed

above.

According to the Commissioner, the bulk of plaintiff's final argument

consists of her repeating her subjective complaints and faulting the ALJ for not

including them in the hypothetical question.  However, because substantial

evidence supports the ALJ's decision to find her not entirely credible, the

Commissioner maintains that this argument fails.  *Casey*, 987 F.2d at 1235 ("It is

well established that an ALJ…is required to incorporate only those limitations

accepted as credible by the finder of fact").

Plaintiff makes one hypothetical question argument that is not dependent on

a successful challenge to the ALJ's credibility determination.  The ALJ asked the

VE what kind of work would be available to an individual who, among other

things, needed "a sit/stand option at least every 30 to 60 minutes."  (Tr. 49).  SSR

17

96-9p states that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." 1996 WL 374185, at *7. Citing this ruling, plaintiff contends that a sit/stand option every 30 to 60 minutes "is not specific enough of an accommodation…" (Pl's Mem. 11) (citing SSR 96-9p). According to the Commissioner, plaintiff did not fully develop this argument that therefore, it is waived. *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("We have cautioned that [i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, and that [i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones") (citations and punctuation omitted).

Additionally, the Commissioner contends that this limitation is sufficiently specific because "every 30 to 60 minutes" means every 30 to 60 minutes. A violation of SSR 96-9p's specificity requirement occurs only when the hypothetical defines the frequency of position changes with vague language like "time to time" or "brief changes in position." *Verstraete v. Astrue*, 2013 WL 238193, at *5 (D. Kan. 2013) (collecting cases). Plaintiff has not pointed to a single case in which a court found a violation of SSR 96-9p where, like here, an ALJ used a definite period to describe the frequency of position changes.

    C.   <u>Plaintiff's Reply</u>

According to plaintiff, defendant tries to confuse plaintiff's disability claims by cherry picking parts of her medical record that are normal or unremarkable. Plaintiff again asserts that the fact that her memory, attention, and concentration were intact at her mental status examination appointment does not negate the fact that her medical conditions cause her to physically, mentally, and emotionally fatigue at a rate that is not conducive with the duration of an entire workday. And, as she fatigues due to her medical conditions, plaintiff says that her capacity for concentration on any work tasks would naturally deteriorate to the point of being unproductive.

Further, plaintiff argues that defendant fails to appreciate that the core of her claims regarding mental disability are from post traumatic stress disorder and bipolar disorder. She suffers from flashbacks daily, and she suffers from more severe emotional breakdowns three to four times a week. (Dkt. 10-2, Pg ID 83-84). The symptoms of these disorders that are work preclusive are the patient's inability to handle stressors. Because of these disorders, plaintiff's ability to be in public and around people has been drastically affected in a way that makes work preclusive. It is notable that the psychological medical examiner "did not see any effort to exaggerate or minimize symptoms." This medical examiner also noted that her prognosis was poor and that her "limitations would result in moderately severe impairment in her capacity to do work related activities."

SSR 96-9p provides that where "the need [to alternate sitting and standing] cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." Based on the frequency, duration, and irregularity that plaintiff requires such freedom to alternate between sitting, standing, and lying down, there ceases to be an occupational base that can accommodate her limitations. As explained in SSR 96-9p, the RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing. The ALJ's RFC assessment for plaintiff indicates a 30-60 sit/stand option. The reason this accommodation is not specific enough is because a 30-60 sit/stand option is not tailored to plaintiff's actual medical needs as it does not provide enough flexibility as to when she may take a break, and it also does not provide all of the modes of accommodative options that plaintiff requires due to her disability. According to plaintiff, as it was noted throughout the record requires the freedom to sit, stand, and/or lie down at any given moment, and that she physically cannot be confined to a regimen where she may only sit or stand every 30 to 60 minutes. And as to the options for breaks that plaintiff would require, the ALJ's RFC only permits sitting or standing, whereas plaintiff requires the ability to sit, stand, and/or lie down at any given moment.

Plaintiff maintains that she does not have the capability to sit/stand in 30-60

minute intervals. Her back pain disallows her to simply alternate between sitting and standing, as both cause her pain in much shorter amounts of time, and neither actually relieves her pain. Plaintiff consistently claimed and testified as such and the objective medical records reinforce that she suffers from a medically recognized degenerative back condition. Her inability to sit or stand comfortably is supported by objective medical evidence without exception. Given these very real physical limitations, the vocational expert testified that plaintiff could not be productive in any sedentary job, and her condition renders her disabled. Therefore, plaintiff maintains that a sit/stand option of 30 to 60 minute intervals fails to properly accommodate her disability, and is not in line with SSR 96-9p.

Plaintiff urges the Court to reject defendant's argument that SSR 96-9p's specificity requirement is only violated when the accommodation is too vague. *Verstraete v. Astrue*, 2013 WL 238193, at *5 (D. Kan. 2013). According to plaintiff, common sense tells us that the plain language of SSR 96-9p – "the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing" - would require a specificity requirement that is actually specific to the needs of the individual. The specificity requirement requires that the RFC assessment is not only specific (as opposed to vague), but further that it is specific to the needs of the individual (as opposed to just specific in enumeration). Therefore, plaintiff contends, because the ALJ's RFC assessment

21

does not map onto her needs, it is per se not specific enough of an accommodation for the needs presented.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

23

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

24

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

     B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

               inability to engage in any substantial gainful activity by

> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits

are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

Plaintiff argues that the ALJ erred in concluding that her testimony as to the intensity and persistence of her symptoms associated with her impairments was not entirely credible.  As the relevant Social Security regulations make clear; however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. §§ 404.1529(a), 416.929.  Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the

28

claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

Here, the undersigned agrees with the Commissioner that the ALJ's

conclusions regarding plaintiff's claims of disabling limitations are supported by

substantial evidence.  As the Commissioner points out, the regulations squarely

contemplate discounting a claimant's credibility based on consideration of his

minimal treatment history.  *See* SSR 96-7p, 1996 WL 374186, at *7; 20 C.F.R.

§§ 404.1529(c)(3), 416.923(c)(3).  Here, as plaintiff concedes, there is minimal

treatment history for either her mental or physical impairments, particularly of any

recent vintage.  Plaintiff suggests that the ALJ's consideration of this factor, where

she could not afford treatment, was improper.  While the ability to afford treatment

is a factor used in determining a claimant's credibility, it is not the only factor to

be considered.  *McClanahan v. Astrue*, 2009 WL 1684488, *6 (M.D. Tenn. 2009)

(While the ALJ found uninsured plaintiff not credible based in large part on lack

of treatment, finding upheld where ALJ expressly considered a variety of other

factors in evaluating credibility of the plaintiff.).  Simply, plaintiff's lack of

treatment was not a "determinative factor" in assessing plaintiff's credibility, but

was properly considered by the ALJ.  *See England v. Comm'r of Soc. Sec.*, 2013

WL 1150718, at *4 *(E.D. Tenn. 2013) (distinguishing *Blankenship* and finding

"Plaintiff was not being penalized for not seeking mental health treatment"

because other valid reasons exist to disbelieve plaintiff's statements, "but the lack

of a record 'cast doubt on the severity of her symptoms as reported to Ms.

Ramey'").

30

Here, as the Commissioner points out, lack of treatment was certainly not the only factor the Commissioner used in assessing plaintiff's credibility.  For example, the ALJ also considered plaintiff's past criminal history in assessing her credibility, which is an entirely appropriate consideration.  *See e.g.*, *Murpy v. Colvin*, 2015 WL 964602, at *8 (S.D. Ohio 2015); *Mead v. Comm'r of Soc. Sec.*, No. 1:12-CV-1318, 2014 WL 1366467, at *12 (W.D. Mich. 2014) (It was not inappropriate to consider plaintiff's criminal history when assessing credibility), citing *Karout v. Astrue*, 2013 WL 1946222 at *5 (D. Or. 2013) ("the ALJ's credibility finding was substantially justified when it was based, among other factors, on claimant's prior criminal convictions"); *Yousif v. Astrue*, 2013 WL 764859 at *9 (M.D. Fla. 2013) (no error where ALJ "discredited the Plaintiff's complaints due to [his] criminal convictions.").

The ALJ also considered plaintiff's testimony regarding her daily activities to assess her credibility.  It is well-settled that an ALJ can consider this information in assessing a claimant's credibility.  20 C.F.R. § 404.1529(c)(3)(I); *see also Warner*, 375 F.3d at 392 (recognizing that in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability); *Heston*, 245 F.3d at 536 (an ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church,

going on vacation, cooking, vacuuming and making beds).  Thus, it was

appropriate for the ALJ to consider plaintiff's activities of daily living as one

factor in assessing her credibility.

In sum, the ALJ evaluated the extent to which the severity of plaintiff's pain

and mental impairments could reasonably be accepted as consistent with the

medical evidence, and found plaintiff's testimony not fully credible.  It is well-

settled that "an ALJ's findings based on the credibility of the applicant are to be

accorded great weight and deference, particularly since an ALJ is charged with the

duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at

531.  Even if the ALJ considered some inappropriate factors such as plaintiff's

discontinuance of AA meetings, any such error was harmless.  *See Ulman v.

Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citation omitted) ("[s]o

long as there remains substantial evidence supporting the ALJ's conclusions on

credibility and the error does not negate the validity of the ALJ's ultimate

credibility conclusion, such is deemed harmless and does not warrant reversal").

For the reasons stated above, the undersigned concludes that there is substantial

evidence in the record to support the ALJ's credibility findings.

To the extent that plaintiff complains that her need for a sit-stand option is

more extensive than that provided in the RFC by the ALJ, this is merely another

disagreement with the ALJ's credibility analysis.  That is, plaintiff disagrees with

the ALJ's decision to not fully credit her claimed need to alternate positions. To the extent that plaintiff is arguing that a sit/stand option is not consistent with sedentary work and has eroded the occupational base, plaintiff also misses the mark. Where, as here, expert vocational testimony is obtained, as opposed to relying solely on the Grids, sedentary work is not inconsistent with a sit/stand option. *See Sharp v. Barnhart*, 152 Fed.Appx. 502, 506-07 (6th Cir. 2005) (rejecting claim that unskilled light work was inherently inconsistent with a sit/stand option); *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224 (6th Cir. 1988) (sit/stand option not inconsistent with sedentary work if vocational expert identifies jobs that an individual with the claimant's residual functional capacity could do); *Whiting v. Comm'r of Soc. Sec.*, 2013 WL 5595359 (E.D. Mich. 2013) ("SSR 83-12 explicitly recognizes that there are some 'light' jobs that can accommodate a sit/stand option . . . ."). Here, the VE specifically testified that a sufficient number of jobs in the sedentary work category were available with both a sit/stand option. It is well-established that sedentary work is not precluded by a sit/stand option. Rather, this is an issue that must be addressed by VE testimony, which is precisely what the ALJ did here. *Wyatt v. Comm'r of Soc. Sec.*, 2014 WL 793643 (E.D. Mich. 2014) (Plaintiff's RFC also included a sit/stand option which would not be accounted for by the grids and would need to be addressed by a VE), citing *Lash v. Astrue*, 2013 WL 821333, at *8 (N.D. Ohio

33

2013).  The undersigned finds no reversible error in this regard.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: June 30, 2015                           s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

<u>**CERTIFICATE OF SERVICE**</u>

        I certify that on June 30, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                              s/Tammy Hallwood
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov